**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pedro J Vega,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>Defendant. | No. CV-23-01614-PHX-DWL<br><br>**ORDER** |

Plaintiff Pedro J. Vega ("Plaintiff") challenges the denial of his application for benefits under the Social Security Act ("the Act") by the Commissioner of the Social Security Administration ("Commissioner"). The Court has reviewed Plaintiff's opening brief (Doc. 12), the Commissioner's answering brief (Doc. 14), and Plaintiff's reply brief (Doc. 15), as well as the Administrative Record (Docs. 8-9, "AR"), and now affirms the Administrative Law Judge's ("ALJ") decision.

I.  Procedural History

On November 19, 2020, Plaintiff filed an application for supplemental security income, alleging disability beginning on April 15, 2020. (AR at 19.)[1] The Social Security Administration ("SSA") denied Plaintiff's application at the initial and reconsideration levels of administrative review and Plaintiff requested a hearing before an ALJ. (*Id.*) On June 24, 2022, following a telephonic hearing, the ALJ issued an unfavorable decision.

---

[1]  Plaintiff filed two earlier applications for disability-related benefits, both of which were denied, but the ALJ found that the presumption of non-disability arising from those determinations had been overcome. (AR at 22.)

(*Id*. at 19-39.) The Appeals Council later denied review. (*Id.* at 1-3.)

II.     Sequential Evaluation Process And Judicial Review

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant has engaged in substantial, gainful work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 416.920(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 416.920(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to step four, where the ALJ determines whether the claimant is still capable of performing past relevant work. *Id.* § 416.920(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v). If not, the claimant is disabled. *Id.*

An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (citations omitted) (internal quotations omitted). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted). In determining whether to reverse an ALJ's decision, the district court reviews only those

1  issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13
2  (9th Cir. 2001).

3  III.   The ALJ's Decision

4        The ALJ found that Plaintiff had not engaged in substantial, gainful work activity
5  since the alleged onset date and that Plaintiff had the following severe impairments:
6  "degenerative changes to the lumbar spine with neuropathy and radiculopathy; depression;
7  anxiety; borderline personality disorder; post-traumatic stress disorder; obesity; HIV;
8  asthma; and obstructive sleep apnea." (AR at 22.)[2] Next, the ALJ concluded that Plaintiff's
9  impairments did not meet or medically equal a listing. (*Id.* at 23-29.) Next, the ALJ
10  calculated Plaintiff's RFC as follows:

> [T]he claimant had the residual functional capacity to perform light exertional work as defined in 20 CFR 416.967(b) with the following limitations: he is incapable of climbing ladders, ropes, and scaffolds and is incapable of crawling; he is capable of occasionally climbing ramps and stairs and occasionally balancing, stooping, kneeling, and crouching; he is capable of frequently pushing and/or pulling with the bilateral lower extremities and frequently operating foot controls with the bilateral feet; he is capable of no more than occasional exposure to extreme temperatures, humidity and wetness, vibrations, and "Atmospheric Conditions" as such term is defined in the Selected Characteristics of Occupations of the Dictionary of Occupational Titles (i.e., "[e]xposure to conditions such as fumes, noxious odors, dusts, mists, gases, and poor ventilation that affect the respiratory system, eyes[,] or the skin"); he is able to perform work that does not require driving as a part of work duties or require any work-related exposure to hazards, such as unprotected heights and unguarded moving machinery; he is capable of traveling to and from a single workplace but is otherwise incapable of traveling for work; he is able to understand, remember, and carry out simple instructions and tasks and work at a consistent pace throughout the workday at simple tasks but not at a production rate pace where each task must be completed within a strict time deadline, such as work on a conveyor belt or assembly line, or within high quota demands, such as work with an hourly quota requirement; he is able to make occasional simple work-related decisions in a job involving only occasional changes in a routine work setting; he is able to sustain

---

[2] The ALJ also noted that Plaintiff had been treated for gastroesophageal reflux disease, hypertension, hyperlipidemia, and carpal tunnel syndrome but concluded those impairments were non-severe. (AR at 22-23.)

- 3 -

concentration and persist at simple tasks, as described, up to 2 hours at a time with normal breaks during an 8-hour workday; he is incapable of in-person face-to-face interaction with the general public and is incapable of performing any tasks requiring customer service duties; and he is capable of no more than occasional interaction with co-workers and supervisors but is incapable of performing tasks requiring conflict resolution, requiring him to direct the work of others or persuade others, or requiring him to work jointly or cooperatively with a co-worker or co-workers on tandem tasks or in a team environment.

(*Id.* at 29-30.)

As part of this RFC determination, the ALJ provided an extensive evaluation of Plaintiff's symptom testimony, concluding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 30-34.) The ALJ also evaluated opinion evidence from various medical sources, concluding as follows: (1) M. Bargan, M.D., prior state agency medical consultant ("somewhat persuasive"); (2) A. Wong, M.D., prior state agency medical consultant ("somewhat persuasive"); (3) L. Waldman, Ph.D., prior state agency psychological consultant ("somewhat persuasive"); and (4) Paula Kresser, Ph.D., prior state agency psychological consultant ("somewhat persuasive"). (*Id.* at 34-36.)[3]

Based on the testimony of a vocational expert ("VE"), the ALJ concluded that although Plaintiff was incapable of performing his past relevant work as a property manager, he was capable of performing various jobs that exist in significant numbers in the national economy, including mail clerk, merchandise marker, and order caller. (*Id.* at 36-39.) Thus, the ALJ concluded that Plaintiff was not disabled. (*Id.* at 39.)

---

[3] The ALJ also "reviewed the prior Administrative Law Judge decisions" but found "them to be minimally persuasive," because "[a]lthough the 2014 and 2018 decisions may have accurately reflected the claimant's impairments and capabilities at the time, they are not particularly relevant when considering his impairments since November 2020." (AR at 36.)

IV. Discussion

Plaintiff raises two issues on appeal: (1) whether the ALJ improperly discredited his symptom testimony; and (2) whether substantial evidence supports the ALJ's RFC determination. (Doc. 12 at 1.) As a remedy, Plaintiff seeks a remand for calculation of benefits or, in the alternative, a remand for further administrative proceedings. (*Id.* at 22-23.)

A. **Symptom Testimony**

1. Standard Of Review

An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation omitted). If so, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (citation omitted). Instead, the ALJ may "reject the claimant's testimony about the severity of [the] symptoms" only by "offering specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488-89 (9th Cir. 2015) (citation omitted).

2. The ALJ's Evaluation Of Plaintiff's Symptom Testimony

The ALJ held that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR at 31.) The ALJ then identified what the Court perceives to be three reasons for discounting Plaintiff's symptom testimony. (*Id.* at 32-34.)

The first reason, as noted, was inconsistency with the objective medical evidence. As to that issue, the ALJ grouped Plaintiff's symptoms and impairments into categories. As for Plaintiff's back impairment, the ALJ noted that an April 2020 lumbar spine MRI

"found mild thecal sac stenosis," an examination in May 2021 showed normal range of motion, an examination in August 2021 showed limited range of motion but normal strength in all extremities, an August 2021 lumbar spine MRI "found mild disc bulge and mild bilateral foraminal stenosis," and an April 2022 examination showed normal strength in all extremities. (*Id.* at 32-33.) Next, as for Plaintiff's asthma, HIV, and sleep apnea, the ALJ noted that Plaintiff denied during an October 2020 examination that he had experienced increased shortness of breath, wheezing, cough, or sputum production. (*Id.* at 33.) As for Plaintiff's mental health issues, the ALJ stated that "throughout the period at issue treating and examining healthcare providers regularly observed the claimant as alert; oriented as to time, place, person, and situation; well-developed, well-nourished, well-groomed, and in no acute distress; cooperative, pleasant, and friendly; with normal mood and affect; coherent in his thoughts; and with intact insight, judgment, and concentration." (*Id.* at 34.) In particular, the ALJ noted an April 2021 examination in which Plaintiff "had an euthymic mood, a logical thought process, normal perception, no hallucinations or delusions, a normal thought process, normal cognition, an average intelligence, and normal insight and judgment." (*Id.*)

      The second reason was that Plaintiff's symptoms improved with conservative treatment. For example, with respect to Plaintiff's back issues, the ALJ noted that during an April 2022 examination, Plaintiff "admitted that his current medications kept him active and functional throughout the day without side effects." (*Id.* at 33.) As for Plaintiff's HIV, the ALJ noted that Plaintiff "began taking antiretroviral medications in 2015 due to HIV. In June 2020, his HIV was well-controlled on his current medication regimen with an undetectable viral load. His CD4 count was 627 in March 2021. In October 2021, he continued to take medication for HIV." (*Id.*) As for Plaintiff's mental health issues, the ALJ stated that "[r]ecommended treatment was conservative and consisted of counselling and prescribed psychotropic medications." (*Id.* at 34.) The ALJ elaborated: "During a September 2021 examination, the claimant's symptoms of depression were fairly controlled, his anxiety was moderate with constant symptoms, and his symptoms of

psychosis which includes auditory hallucinations are fairly controlled with medication." (*Id.*)

The third reason was failing to seek treatment and/or follow treatment recommendations. More specifically, with respect to Plaintiff's back condition, the ALJ noted that although Plaintiff "began physical therapy due to his back pain in mid-December 2020, he was discharged in early January 2021 due to poor attendance." (*Id.* at 32.)

### 3. The Parties' Arguments

Plaintiff argues the ALJ failed to provide legally sufficient reasons for discrediting his symptom testimony. (Doc. 12 at 11-19.) First, Plaintiff argues that the ALJ merely provided a "general medical summary" and "failed to connect the medical records to a specific inconsistency with any particular portion of [his] symptom testimony regarding his impairments." (*Id.* at 11-12.) Second, Plaintiff argues that the ALJ cherry-picked a handful of "normal" findings while ignoring many other "abnormal findings." (*Id.* at 12-14.) Third, Plaintiff argues that the "normal" mental health findings were not inconsistent with his testimony regarding his mental symptoms, because being alert, oriented, and pleasant during an appointment doesn't undermine claims of depression, anxiety, trouble being around others, or hallucinations. (*Id.* at 14-15.) Fourth, Plaintiff argues that the ALJ should not have relied on his discharge from physical therapy as the basis for the adverse credibility finding because the ALJ "did not inquire as to the reason for poor attendance." (*Id.* at 15-16.) Fifth, Plaintiff argues that the ALJ's characterization of his mental-health treatment as conservative was misplaced, because "treatment with medications for psychiatric disorders is generally not considered to be conservative treatment and hospitalization is not required to be deemed disabled." (*Id.* at 16-17.) Sixth, Plaintiff argues that the ALJ placed undue emphasis on his statement during one examination that "his current medications kept him active and functional throughout the day without side effects," because he did not define the terms "active" and "functional" and his other statements during that examination showed significant limitation. (*Id.* at 17-18.)

The Commissioner disagrees and defends the sufficiency of the ALJ's rationale for

discrediting Plaintiff's symptom testimony. (Doc. 14 at 5-11.) First, the Commissioner argues that the ALJ permissibly "found that Plaintiff's back pain improved with treatment" and notes that the evidence of improvement was not limited to Plaintiff's self-report but also included a provider's notation that "Plaintiff's pain was 'well managed' by his medication regime." (*Id.* at 5-6, citing AR 2089.) Second, the Commissioner argues that in light of the repeated mild to moderate findings and normal examination results regarding Plaintiff's back, it was permissible for the ALJ to conclude that such findings were inconsistent with "the debilitation level alleged by Plaintiff." (*Id.* at 6-7.) Third, the Commissioner argues that the ALJ permissibly found that Plaintiff's mental impairments improved from treatment, as "Plaintiff treated his mental health symptoms conservatively with counseling and prescribed psychotropic medications." (*Id.* at 7-8.) Fourth, the Commissioner argues that the ALJ also permissibly found that "the objective evidence was inconsistent with Plaintiff's subjective mental complaints" and disagrees with Plaintiff's contention "that normal clinical findings such as observations that he was pleasant at appointments did not contradict his allegations." (*Id.* at 8-10.)

In reply, Plaintiff accuses the Commissioner of invoking the wrong standard of review (Doc. 15 at 4-5 & n.3); reiterates his contention that the ALJ "failed to connect the medical records to a specific inconsistency with any particular portion of [his] symptom testimony regarding his impairments as required by relevant caselaw in this circuit" (*id.* at 5); reiterates his contention that the handful of "normal" findings were not inconsistent with his testimony (*id.* at 5-6); and reiterates his arguments concerning the improvement-from-treatment factor (*id.* at 6-7).

                4.       <u>Analysis</u>

The Court finds no harmful error in the ALJ's evaluation of Plaintiff's symptom testimony.

First, it was permissible for the ALJ to discount Plaintiff's symptom testimony on the ground that it was inconsistent with the objective medical evidence in the record. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008)

("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.") (citation omitted). Although this may not serve as an ALJ's sole reason for discounting a claimant's symptom testimony, it is a permissible consideration when (as here) it is coupled with other grounds for an adverse credibility finding. *Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("Claimants like Smartt sometimes mischaracterize [Ninth Circuit law] as completely forbidding an ALJ from using inconsistent objective medical evidence in the record to discount subjective symptom testimony. That is a misreading of [Ninth Circuit law]. When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony. We have upheld ALJ decisions that do just that in many cases.") (citations omitted); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.").

The ALJ's finding of inconsistency is supported by substantial evidence. For example, Plaintiff testified that his back condition causes such severe pain that he can only sit for 20 or 30 minutes, that he then needs to stand and walk around for a few minutes to stretch his back, and that he then needs to lay down for an hour-long nap. (AR at 58.) Plaintiff also testified that, due to his back pain, he must stop several times when he attempts to walk one block. (*Id.* at 59.) However, on multiple occasions after the alleged onset date, Plaintiff underwent tests and examinations regarding his back that resulted in normal or mild findings. (*See, e.g., id.* at 479 [April 2020 MRI: "FINDINGS: Alignment is within normal limits. Vertebral body heights are maintained. No significant marrow signal abnormality. Mild dorsal paraspinal muscle atrophy. The conus terminates at a normal level with no abnormal signal."]; *id.* at 1786 [May 2021 examination: "Back: Normal range of motion."]; *id.* at 2093 [August 2021 MRI: "FINDINGS: There is no evidence of spondylolisthesis. No significant scoliosis identified. The conus medularis is not low-lying and appears normal. The disc spaces are preserved."].) Although Plaintiff

correctly notes that some of his back-related medical records contained some abnormal findings, it was still rational for the ALJ to construe the objective medical evidence as inconsistent with Plaintiff's claims of debilitating back pain. *See, e.g., Burch*, 400 F.3d at 681 (ALJ permissibly "considered the objective medical findings in discounting Burch's testimony" where claimant testified that "she had severe low back pain" but an MRI revealed only mild conditions). And "[w]hen evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). *See also Thomas*, 278 F.3d at 954 ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").[4]

        Another of the ALJ's proffered reasons for the adverse credibility finding was that Plaintiff experienced improvement from conservative treatment. This is, in general, a permissible reason under Ninth Circuit law for discrediting a claimant's symptom testimony. *See, e.g., Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) ("[T]he ALJ pointed to Tommasetti's testimony that his severe diabetes was not a 'disabling problem,' was controlled by medication, and was not the reason he stopped working. This testimony undermines Tommasetti's prior claims that his diabetes was among his disabling conditions."); *Fry v. Berryhill*, 749 F. App'x 659, 660 (9th Cir. 2019) ("The ALJ proffered specific, clear, and convincing reasons for discounting Fry's testimony concerning the severity of her symptoms, including . . . the effectiveness of Fry's conservative treatment."). *See also* 20 C.F.R. § 1529(c)(3)(iv)-(v) ("Factors relevant to your symptoms, such as pain, which we will consider include . . . [t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms

---

[4] Given this determination, it is unnecessary to address the sufficiency of the ALJ's reasons for finding Plaintiff's mental-symptom testimony inconsistent with the objective medical evidence. *Pryor v. Comm'r of Soc. Sec. Admin.*, 2024 WL 1672553, *6 (D. Ariz. 2024).

. . . [and] [t]reatment, other than medication, you receive or have received for relief of your pain or other symptoms.").

The ALJ's finding on this issue is supported by substantial evidence. Although Plaintiff testified during the hearing that his treatment for his back condition (*i.e.*, shots) was "not working" (AR at 57-58), a note from one of Plaintiff's medical visits in May 2021 reads as follows:

> Patient presents today with a long standing history of chronic lumbar pain with radiculopathy down BLE in a L4-L5, L5-S1 distribution and bilateral hip pain. ***I did discuss with the patient that I will refill the prescribed medications. The plan was discussed and reviewed with the patient and the patient is agreeable to continue. The current medication regimen will be continued at this time. The patient states that the current medications are helping to keep the patient active and functional throughout the day with no side effects***. The patient was encouraged to stretch throughout the day and continue the home exercise program. . . . I reviewed previous office visit notes and radiology reports which were scanned into patient EMR.

(*Id.* at 2091, emphasis added.) Additionally, another portion of this note reads: "His pain is well managed by the current medication regimen. He denies side effects. I encouraged the patient to stay active and continue to stretch at home." (*Id.* at 2089.) Even if, as Plaintiff argues, it might be possible to construe the May 2021 note as not inconsistent with his testimony, it was rational for the ALJ to conclude otherwise. *Ghanim*, 763 F.3d at 1163; *Thomas*, 278 F.3d at 954.[5]

Given these conclusions, it is unnecessary to decide whether the ALJ's other proffered reasons for discounting Plaintiff's symptom testimony—such as Plaintiff's failure to follow through on physical therapy (AR at 32)—are also supported by substantial evidence. Any error as to those reasons was harmless because the ALJ identified multiple other clear and convincing reasons, supported by substantial evidence, for discrediting Plaintiff's testimony. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("[S]everal

---

[5]   Given this determination, it is unnecessary to resolve the parties' arguments as to whether Plaintiff's treatment for his mental health conditions could permissibly be viewed as conservative.

of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record.") (citations omitted); *Carmickle*, 533 F.3d at 1162-63 ("Because we conclude that two of the ALJ's reasons supporting his adverse credibility finding are invalid, we must determine whether the ALJ's reliance on such reasons was harmless error. . . . [T]he relevant inquiry in this context is not whether the ALJ would have made a different decision absent any error, it is whether the ALJ's decision remains legally valid, despite such error. . . . Here, the ALJ's decision finding Carmickle less than fully credible is valid, despite the errors identified above.") (citation omitted).

  B.  **RFC Determination**

    1.  <u>The Parties' Arguments</u>

Plaintiff's final argument is that "[t]he ALJ's determination of Vega's work capacities was unsupported by substantial evidence in this record" because "[i]nstead of relying on Vega's symptom testimony and relevant evidence in Vega's treatment records that supported that testimony, the ALJ relied on his own view of the medical records to formulate a residual functional capacity and find Vega was not disabled. The ALJ did not rely on *any* medical opinions in this record to formulate the residual functional capacity determination." (Doc. 12 at 19.) Plaintiff also argues that "the ALJ failed to identify specific medical records in support of his finding that Vega could *sustain* light, unskilled work." (*Id.* at 20.)

The Commissioner responds that there was no error because "[e]very doctor who assessed Plaintiff's functioning indicated that Plaintiff would not have debilitating limitations" and the ALJ responded by assigning some weight to those opinions but concluding that the RFC should be more restrictive than the doctors opined. (Doc. 14 at 11.) Alternatively, the Commissioner argues that any error was harmless because, "[b]y incorporating more limitations into the RFC than any doctor assessed, the ALJ made a finding favorable to Plaintiff when evaluating the opinion evidence, and she therefore could not have prejudiced him." (*Id.* at 12.)

In reply, Plaintiff argues that merely adding more limitations to those proposed by the state agency consultants is not a panacea and does not show that the ALJ's chosen RFC was supported by substantial evidence. (Doc. 15 at 7-8.)

### 2. Analysis

The Court finds no error in the RFC formulation. The implicit premise underlying many of Plaintiff's arguments is that the ALJ should have accepted his symptom testimony and fashioned the RFC in accordance with it. (*See, e.g.,* Doc. 12 at 19, emphasis added ["*Instead of relying on Vega's symptom testimony* . . . the ALJ relied on his own view of the medical records to formulate a residual functional capacity . . . ."]; *id.* at 20-21, emphasis added ["The ALJ proposed that the ALJ had enough medical knowledge to reject all medical opinions in this record, *reject Vega's own experience and testimony*, and rely on the ALJ's own perceived medical opinions about Vega's multiple and complex conditions."].) But as noted in Part IV.A above, the ALJ permissibly declined to credit Plaintiff's symptom testimony. *Cf. Sayer v. Kijakazi*, 2022 WL 1153944, *1 (9th Cir. 2022) ("Because the ALJ permissibly weighed Sayer's testimony, Sayer's challenges to the ALJ's residual functional capacity determination likewise fail.").

Furthermore, and as the Commissioner notes, the ALJ partially credited the opinions of the state agency consultants before concluding the RFC should be fashioned in a manner that was more favorable to Plaintiff than the state agency consultants' opinions would have dictated. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) ("[T]he ALJ is responsible for translating and incorporating clinical findings into a succinct RFC."). *See also Pryor*, 2024 WL 1672553 at *7-8 (finding no harmful error under similar circumstances).

…
…
…
…
…

- 13 -

Accordingly,

**IT IS ORDERED** that the decision of the ALJ is **affirmed**. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 10th day of June, 2024.

_____
Dominic W. Lanza
United States District Judge